WENDEL HASAN *v.* WARDEN, STATE PRISON
(10257)

DUPONT, C. J., FOTI and FREEDMAN, Js.

Argued May 1—decision released June 16, 1992

*Louis S. Avitabile,* special public defender, for the appellant (petitioner).

*Julia DiCocco Dewey,* assistant state's attorney, with whom, on the brief, were *Eugene Callahan,* state's attorney, and *Bruce Hudock,* assistant state's attorney, for the appellee (respondent).

FOTI, J. The petitioner appeals from the habeas court's denial of his writ of habeas corpus. Whether that denial should be upheld rests solely on whether the habeas court abused its discretion in denying the petitioner's motion to amend his petition.

The petitioner was found guilty, after a trial by jury, of the crimes of felony murder in violation of General Statutes § 53a-54c, and burglary in the first degree in violation of General Statutes § 53a-101 (a) (2). These crimes occurred on July 2, 1985. Our Supreme Court affirmed the conviction. *State* v. *Hasan,* 205 Conn. 485, 534 A.2d 877 (1987). On August 1, 1986, the petitioner filed a pro se petition for a writ of habeas corpus, alleging ineffective assistance of trial counsel. He filed an amended petition on September 16, 1988, and on March 6, 1990, a second amended petition alleging ineffective assistance of both trial and appellate counsel. After an evidentiary hearing on September 24, September 26, and October 29, 1990, the habeas court denied the petition.

The following is taken from the opinion of our Supreme Court, *State* v. *Hasan,* supra, 486–88. "The jury could reasonably have found the following facts. On July 2, 1985, the police were called to the home of George and Rachel Tyler to investigate a possible homicide. The police found George Tyler dead in the kitchen, Rachel Tyler injured, and the premises apparently ransacked. The Tylers' son and daughter-in-law determined that George Tyler's wallet was missing as was

some of Rachel Tyler's jewelry. Among the evidence secured by the police were broken glass and linoleum bearing a bloody footprint made by a sneaker. Police suspicion turned to the defendant when, on July 5, 1985, a plumber repairing a clogged toilet in a South Norwalk apartment found two credit cards belonging to George Tyler to be the cause of the clog. The plumber turned the cards over to the owner of the apartment, who reported the find to the police. The police obtained a warrant to search the apartment.

"The defendant had been living at the South Norwalk apartment intermittently; it was also occupied by his mother, stepfather, his brother, James Singleton, two sisters and James' girlfriend. Pursuant to the warrant, the police seized several pairs of shoes, including a pair of size ten Puma low cut sneakers which they found at the foot of the bed in which James and his girlfriend slept. The bedroom was actually the defendant's and most of the belongings there were his. James told the police that the sneakers were the defendant's and that his own shoe size was thirteen. During custodial interrogation, the defendant stated that the apartment was his primary residence and that he owned a pair of Puma sneakers like the ones seized.

"The conviction depended in large measure on circumstantial evidence. Glass shards and linoleum fibers found in the sole of one of the sneakers, were similar to the mass produced glass and linoleum located at the crime scene, but could not be positively identified as having come from there. Similarly, human blood detected on the sneakers was consistent with the victims' blood, but could not be positively identified as theirs. During trial, a forensic expert from the Connecticut state police forensic laboratory identified the Puma sneakers as those that made the footprints on the Tylers' kitchen floor. James testified that the defendant had been in and out of the apartment

between July 1 and July 3, 1985, and that he had concluded that the sneakers belonged to the defendant because they were in his room under his bed. A former cellmate of the defendant testified that the defendant had admitted to having taken part in the crimes.

"In addition to the foregoing, the jury heard the testimony of Robert Rinaldi, a podiatrist called by the state as an expert witness, who concluded 'within reasonable podiatric certainty' that based on his examination of the sneakers and the defendant's feet, the sneakers belonged to the defendant."

The petitioner alleges that trial counsel failed to do thirteen things necessary for effective assistance of counsel and that appellate counsel failed to raise four nonfrivolous issues that likely, either individually or together, would have led to the granting of a new trial.

On October 29, 1990, the third day of evidence on the habeas corpus petition, the petitioner's habeas attorney viewed the search warrant and affidavit for the first time. He thereafter sought to include a new allegation of ineffective assistance of counsel regarding trial counsel's failure to challenge the search warrant affidavit by which the sneakers were seized. The habeas court allowed the petitioner to introduce the search warrant and affidavit into evidence. The court did not allow further inquiry into trial counsel's failure to challenge the search warrant affidavit, however, because it was not raised in the second amended petition. After a hearing, the habeas court denied the petitioner's motion to amend the petition to conform to the evidence produced. The petitioner filed his proposed amendment along with an affidavit from the petitioner's appellate attorney indicating that he had not seen the search warrant affidavit prior to December 14, 1990. There was no offer of proof made.

The petitioner claims that a remand is required to allow for a full evidentiary hearing on the issue. " 'While our courts have been liberal in permitting amendments; *Johnson* v. *Toscano,* 144 Conn. 528, 587, 136 A.2d 341 (1957); this liberality has limitations. Amendments should be made seasonably. Factors to be considered in passing on a motion to amend are the length of delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. *Cummings* v. *General Motors Corporation,* 146 Conn. 443, 449–50, 151 A.2d 884 (1959). The motion to amend is addressed to the trial court's discretion which may be exercised to restrain the amendment of pleadings so far as necessary to prevent unreasonable delay of the trial. *Freccia* v. *Martin,* 163 Conn. 160, 164, 302 A.2d 280 (1972).' *Beckman* v. *Jalich Homes, Inc.,* 190 Conn. 299, 302–303, 460 A.2d 448 (1983). . . . It is within the discretion of the trial court to grant or deny an amendment, and a decision to deny an amendment during a trial will not be disturbed unless there is a clear abuse of that discretion. *Lawson* v. *Godfried,* 181 Conn. 214, 216, 435 A.2d 15 (1980)." *Farrell* v. *St. Vincent's Hospital,* 203 Conn. 554, 561–62, 525 A.2d 954 (1987).

"The purpose of the [petition] is to put the [respondent] on notice of the claims made, to limit the issues to be decided, and to prevent surprise." *Papagorgiou* v. *Anastopoulous,* 23 Conn. App. 522, 527, 582 A.2d 1181 (1990). Even if a material variance arguably exists between the allegations and proof, the court, in its discretion, could permit an amendment to the complaint to allow the proof to conform to those pleadings. Practice Book § 178.[1] "Justice is not served [however] by

---

[1] Practice Book § 178 provides: "In all cases of any material variance between allegation and proof, an amendment may be permitted at any stage of the trial. If such allegation was made without reasonable excuse, or if the adverse party was actually misled thereby to his prejudice in maintain-

accepting a claim of variance [between allegations and proof] from a party who at all times has been in a position of knowing the true state of facts." *Schaller* v. *Roadside Inn, Inc.*, 154 Conn. 61, 67, 221 A.2d 263 (1966).

The petitioner claims that he was unaware that a search warrant existed and had no reason to know that the search warrant application was facially and fatally deficient. He contends that he learned of the warrant and its alleged insufficiency for the first time during the respondent's cross-examination of trial counsel at the habeas proceeding. It is evident to us, however, that not only was the search warrant part of the defense file at the time of the petitioner's trial, it was specifically mentioned in the opinion of the Supreme Court on the petitioner's original appeal. It was also the subject of many questions during the petitioner's direct examinations of both trial counsel and appellate counsel. Neither the petitioner nor his habeas counsel could have been unaware of the issuance of the search and seizure warrant. The petitioner cannot seriously make a claim of surprise. Further, this petition has been in the judicial system for approximately four years and was one of the oldest cases on the habeas docket at the time.

Our review of the record in this case fails to show a clear abuse of discretion by the habeas court in denying the petitioner's motion to amend his petition.

The judgment is affirmed.

In this opinion the other judges concurred.

---

ing his action or defense upon the merits, or if such amendment requires postponement of the trial or additional expense to the adverse party and this is shown to the satisfaction of the court, such amendment shall be made only upon payment of costs or upon such terms as the court may deem proper; but in any other case, without costs. Immaterial variances shall be wholly disregarded."