## Ted Rosick *v.* Equipment Maintenance and Service, Inc., et al.
### (11686)

Dupont, C. J., O'Connell and Heiman, Js.

Argued September 27—decision released November 9, 1993

*Donald G. Leis, Jr.,* for the appellant (plaintiff).
*William W. Kaliff,* for the appellees (defendants).

HEIMAN, J. The plaintiff appeals from the trial court's judgment dismissing counts one and two of the complaint and in favor of the named defendant[1] on count three of the complaint.[2] On appeal, the plaintiff asserts that the trial court improperly (1) refused to allow him to present evidence concerning invoices for work done by him to establish that the payments for such work had been made without prior written authorization by the named defendant, Equipment Maintenance and Service, Inc. (Equipment), (2) denied the plaintiff's motion to amend his complaint to conform the pleadings to the proof at trial, (3) granted the defendants' motion for judgment of dismissal for failure of the plaintiff to make a prima facie case as to counts one and two, and (4) found that Equipment was not obligated to pay for additional loads of topsoil delivered to the job site. We affirm the trial court's judgment.

The following facts are necessary for a proper resolution of this appeal. On November 18, 1988, Equipment contracted with the Metropolitan District for the construction of a sanitary bypass sewer and under-

---

[1] The defendants are Equipment Maintenance and Service, Inc., and Utica Insurance Company. Count one of the complaint applies to both defendants while counts two and three apply to Equipment Maintenance and Service, Inc., only.

[2] Count one consisted of an action on a performance bond. Count two was a breach of contract action. Count three was a quantum meruit action. The defendant filed a counterclaim, not involved in this appeal, seeking damages for vexatious suit.

ground comminutor adjacent to the terminal pump station at Bradley International Airport. On July 21, 1989, Equipment subcontracted with the plaintiff, Ted Rosick, doing business as Ted Rosick Construction, to excavate for the installation of a bypass comminutor, a ten inch sewer line, a fifteen inch sewer line, manholes, and conduits. Additionally, the subcontract called for the installation of a stabilization pad, a ten inch sewer line, a fifteen inch sewer line, concrete channels, manholes, a precast chamber, a silt fence, a fine grade, and pavement and curbs around the station. The subcontract called for the work to be substantially completed no later than August 31, 1989. Equipment agreed to pay Rosick $28,025 under the subcontract.

The subcontract contained two provisions central to this appeal. Section 11.9 stated that "the subcontractor may be ordered in writing by the Contractor [Equipment], without invalidating this Subcontract, to make changes in the work within the general scope of the Subcontract consisting of additions, deletions or other revisions, the Contract Sum and the Contract Time being adjusted accordingly. The Subcontractor, prior to the commencement of such changes or revised work, shall submit promptly to the Contractor written copies of any claim for adjustment to the Contract Sum and Contract Time for such revised work in a manner consistent with the Contract Documents." Section 11.10 stated that "the Subcontractor shall make all claims promptly to the Contractor for additional cost, extension of time, and damages for delays or other causes in accordance with the Contract Documents. Any such claim which will affect or become part of a claim which the Contractor is required to make under the Contract Documents within a specified time period or in a specified manner shall be made in sufficient time to permit the Contractor to satisfy the requirements of the Contract Documents. Such claim shall be received by the

Contractor not less than two working days preceding the time by which the Contractor's claim must be made. Failure of the Subcontractor to make such a timely claim shall bind the Subcontractor to the same consequences as those to which the Contractor is bound." Section 11.9 refers to "change orders" while § 11.10 refers to "additional costs."

The plaintiff began work on or about July 23, 1989. The job required him to perform additional work, which he catalogued on seventeen invoices. Equipment paid the plaintiff an additional $5589 in compensation for work billed in six invoices leaving eleven invoices unpaid. The unpaid invoices charged for time that the plaintiff's machines were idle and for moving machinery due to delays, removing unsuitable material, using hoe pac[3] to compact the fill at the job site, supplying bankrun gravel for backfill,[4] raising two manhole frames and covers, providing topsoil, some of which was rejected, recutting the roadway, paving around the comminutor, and renting warning lights and taped drums due to delays. The plaintiff never filed a written claim to change or revise the contract for this work. He claimed that Equipment owed him $20,756 for the additional work.

The plaintiff filed a complaint, which was later amended, alleging that "the plaintiff has provided said materials and labor as required under the terms of said contract, and the plaintiff, at the request of [Equipment] and in accordance with the provisions in section 11.9 of said contract, provided certain additional materials and labor on said project." At the end of the plaintiff's case-in-chief, the trial court dismissed counts one

---

[3] The plaintiff testified that hoe pac is different from standard compaction equipment because it fits onto an excavator and does a better job of compacting the fill.

[4] The plaintiff testified that bankrun gravel is used to stabilize the top portion of earth fill to allow paving.

and two of the complaint on the ground that the plaintiff had failed to produce written change orders. The trial court permitted the case to proceed on count three of the complaint, but only as to the invoice claiming that money was owed for the providing of topsoil. The trial court found that the topsoil claim was outside the scope of the contract while the other claims were within it. At the conclusion of Equipment's case, the trial court found that the plaintiff had not proven the elements necessary to recover under a quantum meruit theory. The trial court stated that the plaintiff failed to substantiate the amount of topsoil used, the amount rejected, or the reasonable unit price. This appeal followed.

I

The plaintiff first claims that the trial court improperly refused to allow him to present evidence concerning invoices for other work he had done that was paid for by Equipment despite a lack of prior written authorization. We are not persuaded.

Certain additional facts are necessary for a proper resolution of this issue. At trial, the plaintiff introduced a ledger sheet kept by him in the ordinary course of business. The ledger revealed the payment records for the Bradley Field pump project. The ledger indicated that Equipment paid him the full contract price totaling $28,025. The ledger also disclosed payment of six additional invoices totaling $5589. Finally, the ledger revealed an outstanding balance of $20,756 for eleven invoices. The eleven unpaid invoices are the basis of this action.

During direct examination of the plaintiff, an attempt was made to elicit testimony as to whether the work completed in connection with the six paid invoices had been authorized in writing. The plaintiff argued that the evidence was admissible to show that the parties

had orally changed the contract and to show the course of conduct between the parties. The defendants objected to the admission of the evidence on the ground of relevancy. The defendants stated that the written contract required written change orders and that oral change orders in the past could not alter the contract requirements. Further, the defendants objected on the ground that the evidence was outside the scope of the complaint, which alleged neither oral changes to the contract nor changes based on a course of conduct. Instead, the complaint alleged that the parties had complied with § 11.9 of the contract. The trial court sustained the defendants' objection on the basis of relevance. The plaintiff failed to take an exception, pursuant to Practice Book § 288,[5] to the trial court's ruling.

We first address the threshold question of whether Practice Book § 288, as amended, applies retroactively. Section 288, as amended effective October 1, 1993, does not require a party to take an exception to an evidentiary ruling to preserve the issue for appeal. "Procedural statutes and rules of practice ordinarily apply 'retroactively to all actions whether pending or not at the time the statute [or rule] became effective, in the absence of any expressed intent to the contrary.' " *Mulrooney* v. *Wambolt,* 215 Conn. 211, 216–17, 575 A.2d 996 (1990); *Citizens Against Pollution Northwest, Inc.* v. *Connecticut Siting Council,* 217 Conn. 143, 151, 584 A.2d 1183 (1991). Since § 288 lacks an expression of contrary intent, we will apply it retroactively and review the plaintiff's claim.

---

[5] Practice Book § 288, prior to October 1, 1993, provided: "Whenever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he desires it to go upon the record, before any discussion or argument is had. Argument upon such objection shall not be made by either party unless the court requests it and, if made, must be brief and to the point. An exception to the ruling must be taken in order to make it a ground for appeal."

"The trial court has broad discretion in determining the relevancy of evidence." *Aspiazu* v. *Orgera,* 205 Conn. 623, 634, 535 A.2d 338 (1987); *Hall* v. *Burns,* 213 Conn. 446, 451, 569 A.2d 10 (1990); *Delott* v. *Roraback,* 179 Conn. 406, 414, 426 A.2d 791 (1980); *Heritage Village Master Assn., Inc.* v. *Heritage Village Water Co.,* 30 Conn. App. 693, 700, 622 A.2d 578 (1993); *Munson* v. *United Technologies Corporation,* 28 Conn. App. 184, 189, 609 A.2d 1066 (1992); 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 67c, p. 504. "Its ruling will only be overturned if there is an abuse of discretion." *Aspiazu* v. *Orgera,* supra; *Hall* v. *Burns,* supra; *Heritage Village Master Assn., Inc.* v. *Heritage Village Water Co.,* supra; *Munson* v. *United Technologies Corporation,* supra. "In determining whether the trial court has abused its broad discretion, we will afford every reasonable presumption in favor of the correctness of its ruling. . . . The ultimate issue to be determined in a claim involving an alleged abuse of the trial court's discretion is whether the trial court could reasonably conclude as it did." (Citations omitted.) *Gemme* v. *Goldberg,* 31 Conn. App. 527, 538, 626 A.2d 318 (1993).

"Evidence is admissible if it has a reasonable tendency to prove or disprove a material fact in issue or shed some light upon some material inquiry. . . ." (Citations omitted; internal quotation marks omitted.) *Munson* v. *United Technologies Corporation,* supra, 190; *Lombardi* v. *Groton,* 26 Conn. App. 157, 163, 599 A.2d 388 (1991), cert. denied, 221 Conn. 908, 600 A.2d 1361 (1992). "What is in issue is determined by the pleadings . . . ." *Telesco* v. *Telesco,* 187 Conn. 715, 720, 447 A.2d 752 (1982); *Vinchiarello* v. *Kathuria,* 18 Conn. App. 377, 383–84, 558 A.2d 262 (1989); *Lundborg* v. *Lundborg,* 15 Conn. App. 156, 159, 543 A.2d 783, cert. denied, 209 Conn. 818, 551 A.2d 756 (1988); *Tehrani* v. *Century Medical Center,* 7 Conn. App. 301,

308, 508 A.2d 814 (1986). " 'The principle that a plaintiff may rely only upon what he has alleged is basic.' " *Kelley* v. *Bonney,* 221 Conn. 549, 590, 606 A.2d 693 (1992); *Tehrani* v. *Century Medical Center,* supra. "The purpose of the complaint is to limit the issues to be decided at the trial of a case . . . . Only those issues raised by the plaintiffs in the latest complaint can be tried . . . ." (Citations omitted.) *Farrell* v. *St. Vincent's Hospital,* 203 Conn. 554, 557–58, 525 A.2d 954 (1987); *Kelley* v. *Bonney,* supra; *Bennett* v. *Automobile Ins. Co. of Hartford,* 32 Conn. App. 617, 620, 630 A.2d 149 (1993); *Lynch* v. *Granby Holdings, Inc.,* 32 Conn. App. 574, 582, 630 A.2d 609 (1993).

The complaint simply states that "the plaintiff has provided said materials and labor as required under the terms of said contract, and the plaintiff, at the request of the defendant [Equipment], and *in accordance with the provisions in Section 11.9 of said contract,* provided certain additional materials and labor on said project." (Emphasis added.) The complaint does not claim an oral modification or waiver of the contract. Since oral modification or waiver is not alleged in the complaint, the issue cannot be tried during the trial. *Farrell* v. *St. Vincent's Hospital,* supra. Therefore, the evidence offered by the plaintiff did not tend to prove a "material fact in issue or shed some light upon some material inquiry. . . ." (Internal quotation marks omitted.) *Munson* v. *United Technologies Corporation,* supra; *Lombardi* v. *Groton,* supra. Accordingly, the trial court correctly excluded the proffered evidence.

## II

The plaintiff next claims that the trial court improperly denied his motion to amend his complaint to conform to the proof at trial. We are unpersuaded.

Certain additional facts are necessary for a proper resolution of this issue. The complaint alleged that the

defendants owed money to the plaintiff under § 11.9 of the contract. During direct examination, the plaintiff testified that the unpaid invoices did not contain charges for change orders under § 11.9 of the contract, but charged for additional work under § 11.10 of the contract. After the testimony, the plaintiff filed a motion to amend the complaint, pursuant to Practice Book § 178,[6] to include a claim under § 11.10 of the contract. The plaintiff claimed that the amendment would conform the pleadings to the proof submitted at the trial. The trial court found that the facts on which the plaintiff based his claim existed three years prior to trial. The court found that the amendment would cause prejudice to the defendants.

"A trial court has wide discretion in granting or denying amendments of pleadings and rarely will this court overturn the decision of the trial court. . . . This court will not interfere with the decision of a trial court not to permit an amendment unless an abuse of discretion is clearly evident." (Citations omitted.) *S.M.S. Textile Mills, Inc.* v. *Brown, Tillinghast, Lahan & King, P.C.,* 32 Conn. App. 786, 794, 631 A.2d 340 (1993); *Kelley* v. *Bonney,* supra, 591. " 'While our courts have been liberal in permitting amendments . . . this liberality has limitations. Amendments should be made seasonably. Factors to be considered in passing on a motion to amend are the length of delay, fairness to the opposing parties and the negligence, if any, of the party offer-

---

[6] Practice Book § 178 provides: "In all cases of any material variance between allegation and proof, an amendment may be permitted at any stage of the trial. If such allegation was made without reasonable excuse, or if the adverse party was actually misled thereby to his prejudice in maintaining his action or defense upon the merits, or if such amendment requires postponement of the trial or additional expense to the adverse party and this is shown to the satisfaction of the court, such amendment shall be made only upon payment of costs or upon such terms as the court may deem proper; but in any other case, without costs. Immaterial variances shall be wholly disregarded."

ing the amendment. . . .' " (Citations omitted.) *Farrell* v. *St. Vincent's Hospital,* supra, 561–62; *Hasan* v. *Warden,* 27 Conn. App. 794, 798, 609 A.2d 1031, cert. denied, 223 Conn. 917, 614 A.2d 821 (1992); *All American Pools, Inc.* v. *Lato,* 20 Conn. App. 625, 629, 569 A.2d 562 (1990). "Although Practice Book § 178 provides that '[in] all cases of any material variance between allegation and proof, an amendment may be permitted at any stage of the trial,' our Supreme Court has often held that the word 'may' is discretionary and not mandatory." *Morales* v. *Trinity Ambulance Service,* 9 Conn. App. 386, 390, 519 A.2d 90 (1986), cert. dismissed, 202 Conn. 806, 520 A.2d 1287 (1987). Upon review, "[a] trial judge has a unique vantage point that entitles his decision to great weight on appeal." *Bielaska* v. *Waterford,* 196 Conn. 151, 154, 491 A.2d 1071 (1985); *Simmons* v. *Southern Connecticut Gas Co.,* 7 Conn. App. 245, 251, 508 A.2d 785 (1986); *Sansone* v. *Lettieri,* 4 Conn. App. 466, 467, 495 A.2d 720 (1985).

The plaintiff has failed to present facts sufficient to demonstrate an abuse of discretion. Here, the plaintiff knew of the factual claims for three years prior to the trial. An amendment would have required the defendants to recall witnesses to counter the evidence elicited by the plaintiff without having time to prepare an adequate defense. The plaintiff, in his brief, argues that the defendants would not be prejudiced by the amendment because the defendants' own trial memorandum referred to a claim under § 11.10 of the contract. While this factor may tend to demonstrate that the defendants would not be prejudiced by the amendment, it is only one piece of evidence. The trial court correctly balanced all relevant factors in denying the motion to amend and the plaintiff has failed to demonstrate that it clearly abused its discretion.

## III

The plaintiff next claims that the trial court improperly dismissed counts one and two and certain claims under count three of the complaint under Practice Book § 302.[7] We disagree.

Certain additional facts are necessary for a proper resolution of this issue. At the end of the plaintiff's case, the defendants moved that the entire complaint be dismissed under Practice Book § 302. The trial court dismissed counts one and two. The trial court also dismissed count three with respect to all the invoices except the invoice that claimed payment for supplying additional topsoil. The trial court stated that there was no evidence that the plaintiff followed the change order procedure to make claims under § 11.9 of the contract as alleged in counts one and two. Further, the trial court dismissed certain claims made in count three because the work set out in those invoices fell within the contract. The trial court denied the motion as to the claim for the topsoil in the quantum meruit count because it did not fall within the contract.

The plaintiff claims that the trial court's finding that the work listed on the unpaid invoices fell within the scope of the contract is inconsistent with the evidence presented at trial. He thus posits that the trial court incorrectly dismissed the quantum meruit claims.

A dismissal "of a case may be resorted to only when a plaintiff has failed to make out a prima facie case, that is, when the evidence produced by the plaintiff, if fully believed, would not permit the trier in reason

---

[7] Practice Book § 302 provides in pertinent part: "If, on the trial of any issue of fact in a civil action tried to the court, the plaintiff has produced his evidence and rested his cause, the defendant may move for judgment of dismissal, and the court may grant such a motion, if in its opinion the plaintiff has failed to make out a prima facie case. . . ."

to find the essential issues on the complaint in favor of the plaintiff. . . ." (Citation omitted; internal quotation marks omitted.) *Logan* v. *O'Neill,* 187 Conn. 721, 728–29, 448 A.2d 1306 (1982); *Ivimey* v. *Watertown,* 30 Conn. App. 742, 751, 622 A.2d 603, cert. denied, 226 Conn. 902, 625 A.2d 1375 (1993). "The plaintiff's evidence is to be interpreted in the light most favorable to the plaintiff and every reasonable inference should be drawn in the plaintiff's favor. . . . We must determine whether the trial court properly determined that the plaintiff failed to provide sufficient evidence to support his prima facie case." (Citation omitted.) *Ivimey* v. *Watertown,* supra; *Bershtein, Bershtein & Bershtein* v. *Nemeth,* 221 Conn. 236, 239, 603 A.2d 389 (1992); *Logan* v. *O'Neill,* supra; *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.,* 187 Conn. 544, 548, 447 A.2d 406 (1982); *Wordie* v. *Staggers,* 27 Conn. App. 463, 466, 606 A.2d 734 (1992). "A party has the same right to submit a weak case as he has to submit a strong one." *Falker* v. *Samperi,* 190 Conn. 412, 419, 461 A.2d 681 (1983). Whether the plaintiff established a prima facie case is a question of law for the court. Id.; *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.,* supra, 561; *Gulycz* v. *Stop & Shop Cos.,* 29 Conn. App. 519, 523, 615 A.2d 1087, cert. denied, 224 Conn. 923, 618 A.2d 527 (1992); *Wordie* v. *Staggers,* supra, 465.

## A
### COUNTS ONE AND TWO

The plaintiff alleged in counts one and two of his complaint that he complied with § 11.9 of the contract. Section 11.9 required the plaintiff to submit written change orders in order to receive payment for work done under that section. The plaintiff submitted no evidence of written change orders. In the absence of any written change orders, the plaintiff could not recover under the

allegations in counts one and two. Thus, the trial court acted properly in dismissing these counts under Practice Book § 302.

## B

### COUNT THREE

The plaintiff claimed damages under a quantum meruit theory in count three. An "implied contract can only exist where there is no express one." *Collins* v. *Lewis,* 111 Conn. 299, 304, 149 A. 668 (1930). "[Q]uantum meruit [is a form] of the equitable remedy of restitution by which a plaintiff may recover the benefit conferred on a defendant in situations where no express contract has been entered into by the parties." *Burns* v. *Koellmer,* 11 Conn. App. 375, 385, 527 A.2d 1210 (1987). "[P]arties who have entered into controlling express contracts are bound by such contracts to the exclusion of inconsistent implied contract obligations." *H. B. Toms Tree Surgery, Inc.* v. *Brant,* 187 Conn. 343, 347, 446 A.2d 1 (1982); *Polverari* v. *Peatt,* 29 Conn. App. 191, 199, 614 A.2d 484, cert. denied, 224 Conn. 913, 617 A.2d 166 (1992).

In determining the scope of a contract, "[t]he plain, clear language of the contract must be accorded its logical effect." *Four D's, Inc.* v. *Mattera,* 25 Conn. App. 308, 313, 594 A.2d 484 (1991). " 'The intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. The question is not what intention existed in the minds of the parties but what intention is expressed in the language used.' " *E & F Construction Co.* v. *Rissil Construction Associates, Inc.,* 181 Conn. 317, 320, 435 A.2d 343 (1980); *Fletcher-Terry Co.* v. *Grzeika,* 1 Conn. App. 422, 430–31, 473 A.2d 1227 (1984). "As we have stated, in situations in which the parties have their agreement in writing, their inten-

tion is to be determined from its language and not on the basis of any intention either may have secretly entertained." (Internal quotation marks omitted.) *Thompson & Peck, Inc.* v. *Harbor Marine Contracting Corporation,* 203 Conn. 123, 130–31, 523 A.2d 1266 (1987). "Normally, a determination of what the parties intended by contractual commitments is 'a question of fact, reversible only if the trier of fact could not reasonably have arrived at the conclusion it had reached'; *Thompson & Peck, Inc.* v. *Harbor Marine Contracting Corporation,* [supra, 130]; but '[w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law.' Id., 131. 'Terms cannot be added to a contract by interpretation.' *Connecticut Union of Telephone Workers* v. *Southern New England Telephone Co.,* 148 Conn. 192, 200, 169 A.2d 646 (1961)." *Gaynor Electric Co.* v. *Hollander,* 29 Conn. App. 865, 872–73, 618 A.2d 532 (1993); *Bank of Boston Connecticut* v. *Schlesinger,* 220 Conn. 152, 158, 595 A.2d 872 (1991).

The plaintiff first claims that road patching was not included in the terms of the contract because the contract states that road patching "will be an extra." This language does not take road patching out of the contract parameters. The contract contained § 11.10, which provided a procedure for the subcontractor to make claims for additional costs. Additional costs include extras. See Black's Law Dictionary (6th Ed. 1990) (extra defined as additional). The express contract provided a procedure for the plaintiff to make a claim for extras and the road patching costs fell within that procedure; thus, because there was an express provision covering road patching, a quantum meruit claim to recover for this work is barred. *H. B. Toms Tree Surgery, Inc.* v. *Brant,* supra; *Collins* v. *Lewis,* supra; *Polverari* v. *Peatt,* supra; *Burns* v. *Koellmer,* supra.

The plaintiff next claims that the raising of the manhole covers was not covered by the contract. The plaintiff refers us to his own testimony and to that of James McCarthy, the Metropolitan District's inspector, to show that the parties discussed and agreed on a price outside of the contract for manhole raising. The plaintiff further argues that if the work fell under the contract, the contract would have included this cost. This argument fails because both witnesses also testified that a change order, under § 11.9 of the contract, should have been submitted before the plaintiff completed the work. The plaintiff's own evidence demonstrated that the contract provided a procedure for the plaintiff to make a claim for raising manhole covers. Therefore, the plaintiff is barred from raising a claim in quantum meruit for this expense. *H. B. Toms Tree Surgery, Inc.* v. *Brant,* supra; *Collins* v. *Lewis,* supra; *Polverari* v. *Peatt,* supra; *Burns* v. *Koellmer,* supra.

The plaintiff's final claim is that the supplying of bankrun gravel was not within the purview of the contract because McCarthy testified that the parties did not anticipate the need for bankrun gravel. This testimony does not place the work outside of the contract. The contract, in § 11.10, provided a procedure for the plaintiff to make a claim for unexpected additional expenses incurred in the course of the work. The plaintiff submitted testimony that he needed the bankrun gravel to pave the pump station, which was explicitly provided for in the contract. The bankrun gravel constituted an additional cost of paving. Thus, the plaintiff cannot raise this claim in quantum meruit. *H. B. Toms Tree Surgery, Inc.* v. *Brant,* supra; *Collins* v. *Lewis,* supra; *Polverari* v. *Peatt,* supra; *Burns* v. *Koellmer,* supra.

There was no evidence presented by the plaintiff that suggested that the work for which he sought recovery in quantum meruit fell outside of the contract. The

plaintiff failed to provide any evidence that would permit the trial court to have found in his favor.

## IV

The plaintiff next claims that the trial court improperly found that Equipment was not obligated to pay for additional loads of topsoil delivered to the job site. We disagree.

Certain additional facts are necessary for a proper resolution of this issue. At trial the plaintiff introduced an invoice for providing topsoil. On cross-examination, McCarthy testified that Equipment rejected none of the topsoil charged in the invoice. Equipment introduced contradictory testimony by Frank Regnery, its project manager. Regnery testified that the plaintiff supplied defective topsoil and that Equipment had to use a local nursery to remedy the situation. After Equipment presented its case, the trial court stated that "very simply, the plaintiff has not proven the elements necessary to recover. . . . [T]here is nothing to substantiate a reasonable unit price. Nothing to substantiate how many yards are not rejected. The plaintiff did not prove his case."

Quantum meruit allows a plaintiff to "recover the benefit conferred on a defendant in situations where no express contract has been entered into by the parties." *Burns* v. *Koellmer, supra.* A determination of a quantum meruit claim "requires a factual examination of the circumstances and of the conduct of the parties . . . that is not a task for an appellate court [but rather for the trier of fact]. . . ." (Citation omitted; internal quotation marks omitted.) *Crowell* v. *Danforth,* 222 Conn. 150, 158, 609 A.2d 654 (1992). "The factual findings of a trial court on any issue are reversible only if they are clearly erroneous. . . . This court cannot retry the facts or pass upon the credibility of the witnesses." (Citations omitted.) *Holy Trinity Church of*

*God in Christ* v. *Aetna Casualty & Surety Co.*, 214 Conn. 216, 223, 571 A.2d 107 (1990). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . ." (Citations omitted; internal quotation marks omitted.) *Dalia* v. *Lawrence*, 226 Conn. 51, 71, 627 A.2d 392 (1993); *Central Connecticut Teachers Federal Credit Union* v. *Grant*, 27 Conn. App. 435, 437–38, 606 A.2d 729 (1992). On the basis of the record, we are unable to conclude that the trial court's finding is clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.