[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this case the plaintiff, Advance Machinery Company, Inc.("Advance"), seeks to recover damages from the defendant, Trumpf, Inc. ("Trumpf"), under the legal theories of breach of contract, unjust enrichment, misrepresentation, the Connecticut Unfair Trade Practices Act, § 42-110a et seq. ("CUTPA"), the Connecticut Franchise Act, and negligence.
After a trial the court finds the following facts. Advance is a machine tool dealer with offices in Kentucky and Indiana. It represents itself as being "Kentucky and Indiana's Largest Machine Tool Dealer," an had sales of $75 million for the period of 1988 through 1994. In 1988 Advance was contacted by Trumpf, a manufacturer and importer of metal forming and other machine tools with an office in Farmington, Connecticut, concerning Advance acting as a representative for Trumpf in Kentucky. Thereafter, on July 14, 1988, Advance and Trumpf entered into a Representative Agreement under the terms of which Trumpf appointed Advance as its representative in Kentucky to solicit and obtain orders for Trumpf products. The Representative Agreement contained a Commission Schedule which provided for commissions ranging from 3% to 10% on various Trumpf product lines and contained the following language pertinent to this case:
 One third (1/3) of the commission shall be allowed to the Representative that places the order.
 One third (1/3) of the commission shall be allowed to the Representative who at TRUMPF's sole discretion provided the major promotional effort resulting in a customer's selection of a TRUMPF product.
One third (1/3) of the commission shall be allowed to CT Page 5163-YYYY the Representative that receives delivery of the machine and who is responsible for installation and customer service.
During the period from 1988 through 1994 Advance received only $30,000 in commissions from Trumpf.
In April, 1992 Frank Ryan of Advance notified Trumpf that a customer, Vermont American, wanted to investigate the feasibility of Laser cutting a low volume of saw blades. Thereafter Trumpf prepared several lengthy proposals for Vermont American which described the capabilities of the Trumpf L2503 LaserCat, a very large laser cutting machine. Advance forwarded the proposals to Vermont American. However, Vermont American and Trumpf communicated directly concerning the specifications of the LaserCat, production of samples, experiments concerning metal fatigue, and other laser cutting systems manufactured by Trumpf. In January, 1994 Ryan of Advance sent Vermont American an updated proposal, which had been prepared by Trumpf. In February Advance anticipated that Vermont American would shortly place its order for the LaserCat. However, the order for the LaserCat was ultimately placed by the Vermont American plant in Toccoa, Georgia, through Georgia Machinery Sales Co., Inc. on March 30, 1994.
Georgia Machinery Sales was the Trumpf representative in Georgia and Donald Pharr, President of Georgia Machinery Sales, had been working with the Vermont American plant in Georgia since 1991 concerning its purchase of Trumpf laser products, and since November, 1992, concerning the purchase of a LaserCat. Unlike Advance, whose involvement with attempting to sell the LaserCat was limited to correspondence and telephone conversations with Vermont American, and very few personal contacts, Pharr made many personal visits to the Vermont American Georgia plant. He also arranged for some of his other customers who had LaserCats to demonstrate them for Vermont American's plant manager and reviewed the plant's budget concerning the financial viability of purchasing a LaserCat. Pharr also advised Vermont American concerning installation of the LaserCat, including the recommendation that the existing plant floor should be replaced to accommodate the LaserCat. Pharr made recommendations concerning a vacuum system which would be less expensive than the system Vermont American was considering. He knew that Vermont American had an affiliation with Bosch Corporation and used that knowledge to convince Vermont American to purchase a LaserCat CT Page 5163-ZZZZ with Bosch controls.
Georgia Machinery Sales received the entire commission for the sale of the LaserCat by check dated August 31, 1994 in the amount of $31,400. Advance has brought this suit because it believes itself entitled to the commission.
The contract (Representative Agreement) between Trumpf and Advance specifies the prerequisites to a representative's receipt of a commission. The representative receiving delivery and responsible for installation and customer service is entitled to one third of the total commission. The undisputed evidence here is that the LaserCat was delivered to Vermont American's plant in Toccoa, Georgia. Installation was arranged by Georgia Machinery and Georgia Machinery is responsible for service of the LaserCat.
The Representative Agreement provides that the representative who places the order is entitled to one third of the commission. Advance never placed an order for the machine sold to the Toccoa, Georgia division of Vermont American. Georgia Machinery placed the order. Advance does not contend that it placed the order. Instead, it argues that it "procured the proposal" for the LaserCat from Trumpf, the order placed by Georgia Machinery must have been based on the proposal Advance procured and, therefore, Advance should receive some or all of the commission due for placing the order.
There is no evidence that the order placed by Georgia Machinery was based on a proposal procured by Advance. Moreover, "procured" as used by Advance merely means "forwarded." Advance did no work on the proposal itself, but merely acted as a middleman who sent the proposal from Trumpf to Vermont Machine.
More importantly, the contract does not provide a division of the commission between representatives who facilitate or procure an order, only for representatives who "place" the order. Advance seeks to change the terms of the contract. It is not within the power of the court to make a new or different contract for the parties. Bank of Boston v. Schlesinger, 220 Conn. 152, 159,595 A.2d 872 (1991); Osborne v. Locke Steel Chain Co., 153 Conn. 527,531, 218 A.2d 526 (1966).
The Representative Agreement provides that the final one third of a commission is payable to the representative who in Trumpf's sole discretion provided the major promotional effort CT Page 5163-AAAAA resulting in the order. Parties who confer authority on a third person to judge sufficiency of performance may not upset that decision absent "proof of fraud, bad faith, arbitrariness or gross misconduct." ML Building Corp. v. Housing Authority of theTown of Enfield, 35 Conn. App. 379, 381-83, ___ A.2d ___ (1994).
At trial there was evidence that Georgia Machinery had a greater knowledge of Vermont American's business needs, and did more work to sell the LaserCat than did Advance. Therefore, Trumpf's exercise of its discretion in favor of Georgia Machinery as the representative who made the "major Promotional effort" was clearly not arbitrary or in bad faith.
Advance also asserts that Trumpf will be unjustly enriched if it receives the benefit of Advance's performance without compensating Advance. This claim is without merit. A claim for unjust enrichment will not lie where there is an enforceable express contract between the parties. Rosick v. EquipmentMaintenance Service, Inc., 33 Conn. App. 25, 632 A.2d 1134
(1993); H.B. Toms Tree Surgery, Inc. v. Brant, 187 Conn. 343,347, 446 A.2d 1 (1982).
Moreover, to claim unjust enrichment, Advance must prove that it had a reasonable expectation of payment. It did not do so. The reasonable expectations of Advance are memorialized in the Representative Agreement. Advance could reasonably have expected that if it fulfilled the requirements for receipt of a commission it would receive a commission, and if it did not fulfill those requirements, it would not.
As Mr. Pharr testified, a representative's commission is never based on the amount of work it does. A representative can do an enormous amount of work toward making a sale, and still lose the sale and the commission to another representative in another territory. Unfortunately, that is the nature of contracts for payment upon commission in general as well as the nature of the Representative Agreement at issue in this case.
In addition Trumpf was not unjustly enriched because it did pay a commission to Georgia Machinery. Trumpf's payment of a second commission to Advance would be unjust.
The plaintiff failed to prove that Trumpf engaged in any actionable misrepresentation or negligence. Since the court has found that Trumpf was merely following the provisions of its CT Page 5163-BBBBB Representative Agreement when it paid a commission to Georgia Machinery, it certainly cannot find that Trumpf engaged in any unfair or deceptive act or practice that would constitute any violation of the Connecticut Unfair Trade Practices Act, §42-110a et seq. ("CUTPA").
Advance's franchise claim is also without merit. There is no evidence that Advance was a franchisee within the meaning of the Connecticut Franchise Act, Connecticut General Statutes § 42-133 (e)(b). According to the material portion of the Act,
 Franchise means an oral or written agreement or arrangement in which (1) a franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor. . .; (2) the operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising or other commercial symbol designating the franchisor or its affiliate. . . .
There was undisputed testimony that less than one percent of Advance's revenues were attributable to Trumpf. It is clear that Advance did not operate under a system substantially, or even partially, prescribed by Trumpf and that the business of Advance was not substantially associated with Trumpf or Trumpf's trademark, advertising or other symbol.
For the foregoing reasons, judgment may enter in favor of the defendant.
By the court,
Aurigemma, J.