# CHARLES D. GIANETTI *v.* JOSEPH LUCIAN GERARDI*

Superior Court, Judicial District of Fairfield
File No. CV-01-0384501-S

Memorandum filed December 23, 2010

*Proceedings*

*Charles D. Gianetti*, pro se, the plaintiff.

*Joseph Lucian Gerardi*, pro se, the defendant.

BELLIS, J.

## FACTS

On March 11, 2002, the plaintiff, Charles D. Gianetti, filed a three count substitute complaint, in which he alleges causes of action for breach of an implied contract, unjust enrichment and quantum meruit against the defendant, Joseph Lucian Gerardi. The dispute was sent to an attorney trial referee, who rendered his report on September 29, 2003.

In his report, the attorney trial referee found the following facts. The plaintiff, a physician, performed plastic surgery and other medical treatment on Tyler Kenney, a minor child who had been bitten by a dog. The defendant is an attorney who represented Tyler

---

* Affirmed. *Gianetti v. Gerardi*, 133 Conn. App. 858, 38 A.3d 1211 (2012).

and his mother in a lawsuit related to Tyler's injuries. The plaintiff sent a bill in the amount of $6870, which bill is customary and reasonable for the services rendered, to both Tyler's mother and the insurance carrier for the dog's owner. Although the defendant requested a bill and medical records from the plaintiff, the plaintiff did not provide the defendant with those items. The plaintiff indicated to the defendant that he would only supply the bill and medical information if he received a letter of protection from the defendant.[1] The defendant indicated to the plaintiff that if the plaintiff sent the defendant a bill, the defendant would submit it to the insurance carrier and provide a letter of protection for any reasonable bill to the extent that it was not paid by the insurance carrier. There was no meeting of the minds between the plaintiff and the defendant on the issues of payment and the supplying of medical information and a bill. The defendant advised the plaintiff that he would not be responsible for payment of the plaintiff's bill for services to Tyler.

With regard to count one of the complaint, the referee concluded that, because there was no meeting of the minds, there was no implied contract between the plaintiff and the defendant. With regard to count two, the referee concluded that the plaintiff did not prove unjust enrichment because there was no evidence of any benefit to the defendant nor was there evidence that the

---

[1] "A letter of protection . . . is a letter written by a lawyer—acting in the course of representing a client—to a provider of goods and services to or for the benefit of that client in which the lawyer undertakes to pay the provider for those goods and services out of funds the lawyer anticipates receiving for the client. Typically, the provider is a professional (e.g., a physician) who has provided or will be providing either professional services to the client or services or reports incident to litigation the lawyer is handling for the client . . . . Typically, too, the funds from which payment is promised are funds anticipated from either settlement of the litigation or judgment in the case." Connecticut Bar Association Committee on Professional Ethics, Informal Opinion No. 95-18 (1995).

defendant unjustly failed to pay the plaintiff for any such benefit. Finally, with regard to count three, the referee concluded that the plaintiff failed to establish a claim of quantum meruit because there was no implied agreement or tacit understanding between the plaintiff and the defendant regarding payment by the defendant for services rendered by the plaintiff. On the contrary, the referee concluded that there was a complete lack of agreement or understanding regarding that issue.

On March 9, 2004, the plaintiff filed an objection to the attorney trial referee's report.[2] The plaintiff objects to the referee's findings that (1) there was no meeting of the minds between the plaintiff and the defendant on the issues of payment and the supplying of medical information and a bill and (2) the defendant advised the plaintiff that the defendant would not be responsible for payment of the plaintiff's bill. The plaintiff also argues that the referee's conclusions that the plaintiff failed to prove each of his three causes of action are incorrect. On August 12, 2010, the defendant filed a memorandum in opposition to the plaintiff's objection.

## DISCUSSION

"The report of . . . [an] attorney trial referee shall state . . . the facts found and the conclusions drawn therefrom. . . ." Practice Book § 19-8 (a). "A party may file objections to the acceptance of a report on the ground that conclusions of fact stated in it were not properly reached on the basis of the subordinate facts found, or that the . . . attorney trial referee erred in rulings . . . or that there are other reasons why the report should not be accepted. . . ." Practice Book

---

[2] The court, *Arnold, J.*, originally overruled the plaintiff's objection on the ground of untimeliness and granted the defendant's motion for judgment on the referee's report. On appeal, the Appellate Court reversed, concluding that the trial court's decision was an abuse of discretion. *Gianetti* v. *Gerardi*, 122 Conn. App. 126, 130–31, 998 A.2d 807 (2010). Thus, the case was remanded for consideration of the merits of the plaintiff's objection.

§ 19-14. "The court shall render such judgment as the law requires upon the facts in the report. If the court finds that the . . . attorney trial referee has materially erred in its rulings or that there are other sufficient reasons why the report should not be accepted, the court shall reject the report and refer the matter to the same or another . . . attorney trial referee . . . for a new trial or revoke the reference and leave the case to be disposed of in court." Practice Book § 19-17 (a).

"The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Meadows* v. *Higgins*, 249 Conn. 155, 162, 733 A.2d 172 (1999). "A reviewing authority may not substitute its findings for those of the trier of the facts." *Wilcox Trucking, Inc.* v. *Mansour Builders, Inc.*, 20 Conn. App. 420, 423, 567 A.2d 1250 (1989), cert. denied, 214 Conn. 804, 573 A.2d 318 (1990).

"[T]he trial court may not retry the case . . . [but] must review the referee's entire report to determine whether the recommendations contained in it are supported by findings of fact in the report. . . . [T]he trial court cannot accept an attorney trial referee's report containing legal conclusions for which there are no subordinate facts." (Internal quotation marks omitted.) *LPP Mortgage, Ltd.* v. *Lynch*, 122 Conn. App. 686, 692, 1 A.3d 157 (2010). "[B]ecause the attorney trial referee does not have the powers of a court and is simply a fact finder, [a]ny legal conclusions reached by an attorney trial referee have no conclusive effect. . . . The reviewing court is the effective arbiter of the law and

the legal opinions of [an attorney trial referee] . . . though they may be helpful, carry no weight not justified by their soundness as viewed by the court that renders judgment. . . . Where legal conclusions are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts found by the . . . referee." (Internal quotation marks omitted.) *Hees* v. *Burke Construction, Inc.*, 290 Conn. 1, 7, 961 A.2d 373 (2009).

## OBJECTIONS TO THE REFEREE'S FINDINGS OF FACT

First, the plaintiff objects to the referee's finding that there was no meeting of the minds between the plaintiff and the defendant on the issues of payment and the supplying of medical information and a bill. The plaintiff does not elaborate on the reasons for this objection. In accordance with the standards set forth above, however, the court may not disturb the referee's findings of fact unless they are clearly erroneous. Here, the evidence presented to the referee included a letter (plaintiff's exhibit I) dated May 29, 1996, from Alan Neigher, an attorney representing the plaintiff, to the defendant, in which Neigher states: "If you will send me a letter of protection, [the plaintiff] will immediately send to you his bill and medical records. . . . Please let me know if this is agreeable to you." In a letter (plaintiff's exhibit C) dated June 28, 1996, from the defendant to Neigher, the defendant stated: "If [the plaintiff] wants to provide me with his bill and notes, and if the amount of the bill is reasonable for the services provided, I will submit them to the insurance carrier that is responsible for Tyler's bills. If any portion of the submitted bill is not paid, I will then provide [the plaintiff] with a letter of protection." Finally, in another letter (plaintiff's exhibit E) to Neigher dated November 26, 1996, the defendant stated: "I thought the impasse was resolved. You had said that [the plaintiff] would

rather not be paid (and have [Tyler's] claim proceed without his bills and notes) than to submit his bills and notes without first receiving a letter of protection. You said that [the plaintiff] had been burned too many times; and for him no payment was better than helping [Tyler's] claim. I informed [Tyler's mother] about this and she instructed me to proceed without [the plaintiff's] bills and notes."

On the basis of the foregoing evidence, the referee reasonably could have concluded that the plaintiff, through his attorney, offered to send the bill to the defendant once the defendant had sent a letter of protection, but that the defendant stated in response that he would provide a letter of protection only once the plaintiff provided the bill, the defendant determined that it was reasonable and submitted it to the insurance carrier, and any portion of the bill was then unpaid. The referee also reasonably could have concluded, on the basis of the November 26, 1996 letter, that the parties were unable to resolve this impasse and come to any agreement for the plaintiff to submit a bill and be paid for it by the defendant. Accordingly, the referee's finding that there was no meeting of the minds on this issue was not clearly erroneous.

Next, the plaintiff objects to the referee's finding that the defendant advised the plaintiff that the defendant would not be responsible for payment of the plaintiff's bill. In support of his objection, the plaintiff simply states that "there is no supporting evidence for this statement." Contrary to the plaintiff's assertion, the plaintiff's own exhibit F is a letter from the defendant to Neigher, in which the defendant stated: "[O]ur agreement was that since [the plaintiff] refused to give me a bill, Tyler's claim would proceed without a bill submitted by [the plaintiff] and [the plaintiff] would not be paid." Accordingly, there was evidence in the record

to support the referee's finding, and that finding was not clearly erroneous.

## OBJECTIONS TO THE REFEREE'S CONCLUSIONS

### Count One: Breach of Implied Contract

The plaintiff challenges the referee's conclusion that, because there was no meeting of the minds, there was no implied contract between the plaintiff and the defendant. The basic elements of a cause of action for breach of an implied contract are "formation, performance, breach and damages." *Bross* v. *Hillside Acres, Inc.*, 92 Conn. App. 773, 782, 887 A.2d 420 (2006). "An implied in fact contract is the same as an express contract, except that assent is not expressed in words, but is implied from the conduct of the parties." *Vertex, Inc.* v. *Waterbury*, 278 Conn. 557, 573–74, 898 A.2d 178 (2006). "[I]t is not fatal to a finding of an implied contract that there were no express manifestations of mutual assent if the parties, by their conduct, recognized the existence of contractual obligations." (Internal quotation marks omitted.) *Janusauskas* v. *Fichman*, 264 Conn. 796, 805, 826 A.2d 1066 (2003).

As stated above, the referee reasonably concluded that there was no meeting of the minds between the plaintiff and the defendant on the issues of payment and the supplying of medical information and a bill. As the authorities above indicate, although an implied contract does not require an express statement of mutual assent, and assent may be inferred from the parties' conduct, assent is nevertheless required. The finding that there was no meeting of the minds therefore is fatal to the plaintiff's claim that the parties had an implied contract requiring the defendant to pay the plaintiff from the insurance proceeds. The referee correctly concluded, based on the facts found, that the plaintiff failed to prove breach of an implied contract.

## Count Two: Unjust Enrichment

The plaintiff next challenges the referee's conclusion that the plaintiff did not prove unjust enrichment because there was no evidence of any benefit to the defendant nor was there evidence that the defendant unjustly failed to pay the plaintiff for any such benefit. "A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. . . . Unjust enrichment is, consistent with the principles of equity, a broad and flexible remedy. . . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." (Internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 433, 451–52, 970 A.2d 592 (2009).

Although the plaintiff disputes the referee's conclusion that there was no evidence of any benefit to the defendant, the plaintiff does not point to any evidence of such a benefit. The plaintiff points to nothing in the record indicating that the defendant ultimately retained any insurance proceeds for his own benefit. A plaintiff claiming unjust enrichment has the burden of proof on the issue. See *Garwood & Sons Construction Co.* v. *Centos Associates Ltd. Partnership*, 8 Conn. App. 185, 187–88, 511 A.2d 377 (1986). Accordingly, it was incumbent on the plaintiff to produce some evidence from

which the referee could conclude that the defendant was benefited.

Similarly, the plaintiff has not pointed to any evidence contradicting the referee's conclusion that the defendant did not unjustly fail to pay the plaintiff. The crux of the plaintiff's argument is that, because settlement funds were received from the dog owner's insurance carrier and involved the medical services provided to the defendant's client by the plaintiff, the defendant acted unjustly in failing to reimburse the plaintiff.

An attorney's duty to deliver funds to a client or third party is governed by rule 1.15 (e) of the Rules of Professional Conduct, which provides: "Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client or third person, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property." "[T]he adage that 'the lawyer's first duty is to the client' is time-tested and a foundation for the practice of law. However, the rule is not absolute." *State* v. *Porzio*, Superior Court, judicial district of Hartford, Docket No. CV-10-6008253-S (November 10, 2010) (*Robaina, J.*). Specifically, rule 1.15 (e) requires an attorney to deliver funds to a third person who "has an interest" in the funds. See id. (citing Rules of Professional Conduct 1.15 [b] [now § 1.15 (e)] and Connecticut Bar Association Committee on Professional Ethics, Informal Opinion No. 95-20 [1995]). The Connecticut Bar Association's Committee on Professional Ethics, in an informal ethics opinion, has concluded that "the only 'interests' affected by [Rule 1.15 (e)] are legal interests."

Connecticut Bar Association Committee on Professional Ethics, Informal Opinion No. 95-20 (1995). Accordingly, "the lawyer is constitutionally obligated to deliver the property to the client on demand, despite third party claims to the property, except in three limited situations: (a) if the lawyer knows of a valid judgment concerning disposition of the property; (b) the lawyer knows of a valid statutory or judgment lien against the property; or (c) the lawyer knows of a letter of protection or similar obligation . . . ." Id.; see also *State* v. *Porzio*, supra, Superior Court, Docket No. CV-10-6008253-S.

Applying these principles to the present case, there was no evidence before the referee indicating that there was a valid judgment concerning disposition of the insurance funds or that there was a lien against the funds. Consequently, the only applicable exception that could have compelled the defendant to deliver the funds to the plaintiff would have been if there was a letter of protection or similar obligation. As the referee specifically found, however, the parties failed to reach an agreement in their dispute over payment of the insurance proceeds and whether a letter of protection would be provided. Accordingly, the defendant had no obligation to deliver the funds to the [plaintiff], and there is no basis for overturning the referee's determination that the defendant did not unjustly fail to pay the plaintiff.

Because there was no evidence of any benefit to the defendant nor was there evidence that the defendant unjustly failed to pay the plaintiff, the referee's conclusion that the plaintiff did not prove unjust enrichment was legally and logically correct and supported by the facts found.

### Count Three: Quantum Meruit

Finally, the plaintiff challenges the referee's conclusion that the plaintiff failed to establish a claim of quantum meruit because there was no implied agreement

or tacit understanding between the plaintiff and the defendant regarding payment by the defendant for services rendered by the plaintiff. "Quantum meruit is a theory of contract recovery that does not depend upon the existence of a contract, either express or implied in fact. . . . Rather, quantum meruit arises out of the need to avoid unjust enrichment to a party, even in the absence of an actual agreement. . . . Quantum meruit literally means as much as he has deserved . . . . Black's Law Dictionary (7th Ed. 1999). Centered on the prevention of injustice, quantum meruit strikes the appropriate balance by evaluating the equities and guaranteeing that the party who has rendered services receives a reasonable sum for those services." (Citations omitted; internal quotation marks omitted.) *Gagne* v. *Vaccaro*, 255 Conn. 390, 401, 766 A.2d 416 (2001).

"Quantum meruit allows a plaintiff to recover the benefit conferred on a defendant in situations where no express contract has been entered into by the parties. . . . A determination of a quantum meruit claim requires a factual examination of the circumstances and of the conduct of the parties . . . ." (Citation omitted; internal quotation marks omitted.) *Rosick* v. *Equipment Maintenance & Service, Inc.*, 33 Conn. App. 25, 40, 632 A.2d 1134 (1993). A determination that the remedy of quantum meruit is appropriate is a factual determination that may be reversed only if clearly erroneous. Id., 40–41.

As stated above, recovery under a theory of quantum meruit does not generally require the existence of a contract. Nevertheless, under the circumstances of the present case, the referee's conclusion that relief under that theory was unwarranted because of the total failure of the parties to reach an agreement was not clearly erroneous. As discussed above, the referee reasonably found that the parties failed to reach an agreement in

their dispute regarding payment and a letter of protection. The analysis set forth above regarding the claim of unjust enrichment in count two is equally applicable here. While a letter of protection might have created an obligation on the part of the defendant to deliver the funds to the plaintiff, no such letter was ever provided due to the parties' inability to reach an agreement. Accordingly, the referee's conclusion that the plaintiff failed to establish a claim of quantum meruit was not clearly erroneous.

## CONCLUSION

The attorney trial referee's findings of fact were supported by evidence in the record and therefore were not clearly erroneous. Furthermore, the referee's legal conclusions were legally and logically correct and supported by the facts found by the referee. Accordingly, the plaintiff's objection to the referee's report is overruled.