MABEL L. SISISKY *v.* ENFIELD CHRYSLER-PLYMOUTH, INC.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 13-6512-2561

Argued June 12—decided July 19, 1968

*Walter R. Dudek,* of Thompsonville, for the appellant (defendant).

*Phillip E. Tatoian, Jr.,* of Thompsonville, for the appellee (plaintiff).

MACDONALD, J. The plaintiff brought this action to recover moneys alleged to be due by reason of the defendant corporation's use and occupancy of a portion of certain real property located in Thompsonville, in the town of Enfield, and known as 917 Enfield Street. With an answer denying the claim, the defendant filed a counterclaim alleging (a) that the plaintiff had represented the rental premises to be in good and usable condition for the sale and repair of automobiles, (b) that the premises were not in such a condition because the roof leaked and the plumbing was inadequate and defective, as were the electrical and heating systems, and (c) that after the plaintiff was requested to make the necessary repairs she promised to do so and failed to do so, all of which compelled the defendant to expend certain sums of money. From a judgment for the plaintiff on the complaint and on the defendant's counterclaim, the defendant has appealed.

We note the plaintiff's motion to dismiss the appeal on the ground that the assignment of errors is in improper form (Practice Book §§ 989, 990 & Form 819), and to dismiss the appeal under authority of Practice Book § 976. The assignment of errors is indeed defective in form. In the interest, however,

of substantial justice, we consider and treat the errors assigned, in substance, as (a) the trial court's denial of the defendant's motion to correct most of the finding, and (b) certain conclusions reached by the trial court based upon the subordinate facts found. The motion to dismiss the appeal is therefore denied. We consider the appeal on the merits. *O'Keefe* v. *Bassett*, 132 Conn. 659, 660.

In connection with its appeal, the defendant submitted a lengthy draft finding, and the plaintiff submitted a counterfinding. After the court had filed its finding, the defendant filed a motion to correct, consisting in substance of a wholesale attack on the court's finding, a practice which we have frequently criticized. Attacks of this nature rarely produce beneficial results. *Jarrett* v. *Jarrett*, 151 Conn. 180, 181. "To a very large extent, the facts which the plaintiffs seek to have added to the finding were not admitted or undisputed, and there was evidence to support the facts which were found and which the plaintiffs seek to have stricken. We cannot substitute the plaintiffs' version of the facts for those found by the court. We cannot retry the case. The trier is the sole arbiter of the weight and credibility to be accorded to the testimony of the witnesses. If the trial court accepts testimony it reasonably believes to be credible, we cannot say that there was no evidence reasonably supporting the findings, and the finding cannot be disturbed." *Papile* v. *Robinson*, 4 Conn. Cir. Ct. 307, 310; see Practice Book § 985.

In its assignment of errors, the defendant has again made a wholesale attack on the court's finding —from which it is apparent that the defendant wants us to adopt its theory of the case and to retry it, which, of course, we cannot do; *Trenchard* v. *Trenchard*, 141 Conn. 627, 631—and in part attempts to embrace all of the claims made in its draft finding,

by which the court was not bound; *Humphrys* v. *Beach,* 149 Conn. 14, 20; *Wilson* v. *M & M Transportation Co.,* 125 Conn. 36, 42; and in part makes an effort to substitute its own conclusions, based on subordinate facts which it wished the court to find, for those of the court. If the court's conclusions, hereinafter discussed, are supported by the finding of facts and are not illogical, arbitrary or contrary to law, they must be sustained. *Taylor* v. *Taylor,* 154 Conn. 340, 343.

The finding, together with such corrections as may be made; Practice Book § 985; discloses the following facts. Prior to August 1, 1963, and at all times herein, the plaintiff was the owner of a building used for an automobile showroom and for garage purposes at 917-919 Enfield Street, at its intersection with Enfield Avenue, in Thompsonville, in the town of Enfield. Enfield Street at this point runs northerly and southerly and is intersected by Enfield Avenue, running easterly and westerly. The premises in question are located in the southeast corner of the intersection of Enfield Street and Enfield Avenue, and the plaintiff's building on the premises parallels Enfield Avenue, extending easterly and westerly. The northerly half of the building and of the land, easterly and westerly of it, is identified as 917 Enfield Street; the southerly half of the building and the remainder of the tract are known as 919 Enfield Street. The building itself is served by a single boiler, located in the basement of 919 Enfield Street. The plaintiff is an elderly woman not in good health and had delegated the management of the particular real estate to her son, Samuel Sisisky, who is in the construction business, chiefly residential, but partly commercial, in Groton, Connecticut.

Since on or about August 1, 1963, the defendant had rights under a dealer franchise with Chrysler

Corporation for Chrysler and Plymouth automobiles, and on or about August 1, 1963, the plaintiff leased the premises at 917 Enfield Street, including access to the single boiler located at 919 Enfield Street, for a rental of $350 per month. The defendant paid the rent for August, 1963, took possession, and thereafter retained possession of the premises on a month-to-month basis and paid rent for them at the rate of $350 per month up to August 1, 1965. On or about August 30, 1963, the defendant and Chrysler Motor Corporation executed a so-called "Dealership Identification Agreement," the contents of which were not made known to the trial court for the reason that the agreement was not offered in evidence. On December 28, 1963, the plaintiff and Chrysler Motor Corporation executed an "Endorsement By Owner" of the "facilities" allegedly referred to in the "Dealership Identification Agreement"; inter alia, the plaintiff authorized Chrysler Motor Corporation to instal signs on the premises in question and to remove them, with the reservation that the signs were to remain the property of the Chrysler Motor Corporation. On April 9, 1964, the defendant, acting by Dana W. Miller, its president, filed application with the Enfield zoning commission for a permit for the erection of a large illuminated sign topped with a revolving pentagon, all to be attached to a steel beam set in concrete, rising to a height of twenty-four feet above the ground and to be located two feet from the north wall of the building on the leased premises. The written application stated, inter alia, that the owner of the sign was Enfield Chrysler-Plymouth, Inc. The Enfield zoning commission on June 4, 1964, granted the permit, and the sign was thereafter erected on the leased premises. The sign was operated and controlled by two time clocks located on the interior north wall of the building.

In July, 1965, the plaintiff gave the defendant written notice that the rent, commencing August 1, 1965, would be increased to $400 per month, and thereafter, during the month of July, 1965, the defendant removed all of its personal property from the building on the leased premises with the exception of the time clocks. In August, 1965, the defendant set up its business operations at a different location in the neighborhood, namely on the opposite side of Enfield Street on premises known as 907 Enfield Street, and made no further payments of rent to the plaintiff. The large illuminated revolving sign in question remained on the plaintiff's premises in full operation until December 15, 1965, on which date the sign and the time clocks controlling it were removed by a third party. The defendant continued to park some of its new automobiles on the premises known as 917 Enfield Street until May, 1966. No other tenant occupied or paid rent for the premises in question during the period of August 1, 1965, to December 15, 1965.

From these facts the court concluded that (a) the defendant was the owner of the illuminated revolving sign installed on the northerly portion of the plaintiff's building, (b) the presence of the sign on the leased premises in full illumination and operation from August 1, 1965, to December 15, 1965, constituted a retention of the premises by the defendant, and (c) the defendant was liable for the reasonable use and occupancy of the premises known as 917 Enfield Street from August 1, 1965, to December 15, 1965. The court further concluded that the reasonable value of such use and occupancy was $350 per month, which was the rental in effect prior to the plaintiff's unsuccessful attempt to increase it on August 1, and awarded damages on that basis for the months of August, September, October and November, 1965, with the first half of December, 1965,

prorated. The court further concluded that even though the defendant did use the premises in question for parking purposes from August 1, 1965, to May, 1966, there was no evidence adduced on which to base a finding as to reasonable value. With respect to this last conclusion the defendant does not quarrel, and there is no issue for us to consider.

The defendant has devoted a great deal of attention to attacking the court's conclusion that the defendant was the owner of the large illuminated revolving sign. It is contended that the plaintiff knew that Chrysler Motor Corporation was the owner of the sign when she endorsed the "Endorsement by Owner" of the "facilities" allegedly referred to in the "Dealership Identification Agreement." Some three and a half months after this endorsement, however, the defendant affirmatively, in writing and on public record, stated that it was the owner of the sign, in its application for a permit from the Enfield zoning commission to erect the sign. The record is barren of evidence indicating transfer of ownership or lack of transfer of ownership. The trial court could reasonably conclude on the basis of the evidence before it that the defendant was the owner of the sign in question during the period August 1, 1965, to December 15, 1965.

There was a great deal of conflict in the evidence as to the relationship of Harold Bromage, a local real estate agent, to the plaintiff and as to his authority to act on behalf of the plaintiff. The court found that in February and March of 1965 the plaintiff's son, Samuel Sisisky, came to Thompsonville and discussed with Mr. Miller, the president of the defendant, the possibility of the defendant's purchasing the property at 917-919 Enfield Street; in June and July, 1965, Bromage, acting for Sisisky, discussed with Mr. Miller the possibility of the defendant's substituting a long-term lease for its

month-to-month arrangement or purchasing the premises. Nothing tangible resulted from these negotiations. Further, even though the defendant claimed to have returned the keys to the premises to Bromage prior to August 1, 1965, the plaintiff through her counsel made written demand on the defendant for payment of rent for the months of August and September, 1965, in the amount of $800, with a request for return of the keys if the defendant did not intend to continue its tenancy. It is for the trier to pass on the credibility of witnesses, and where the case presents controversial issues of fact these are solely for the trier to decide. *Romaniello* v. *Dyna Distributors, Inc.,* 154 Conn. 605, 606. Where the facts are not admitted or not undisputed and where the existence of a fact depends on questions of credibility, controversial issues of fact are solely for the trial court to decide. The acceptance or rejection of testimony is a matter for the trial court. *Nixon* v. *Gniazdowski,* 145 Conn. 46, 48. The court could reasonably conclude that the defendant did not effect with finality its termination of possession of the premises.

The court concluded as a matter of law that the presence of the large illuminated revolving sign on the leased premises in full operation and illumination from August 1, 1965, to December 15, 1965, constituted a retention thereof by the defendant and that the defendant was therefore liable for the reasonable value of the use and occupancy of the premises during that period. We have found no exactly apposite authority with respect to this precise question, but the weight of general authority supports the proposition that this particular type of retention of the premises, redounding as it did to the economic benefit of the defendant, constitutes use and occupancy. 32 Am. Jur. 781, Landlord and Tenant, § 921, and authority cited.

Be that as it may, the law in Connecticut and elsewhere has been and is that where a relationship of landlord and tenant exists, as it did in this case, an action for use and occupancy may be sustained. The principle is immutable that an action for use and occupancy is available to the owner of land against an occupier where the relationship of landlord and tenant exists by virtue of a contract, express or implied. See *Schenectady Discount Corporation* v. *Matt*, 2 Conn. Cir. Ct. 638, 640, and authorities cited. The trial court was not in error in concluding that the defendant was liable for the reasonable value of its use and occupancy for the period August 1, 1965, to December 15, 1965. The action of the court, in awarding damages as it did, was reasonable. Damages in such a situation are not susceptible of exact ascertainment and cannot be fixed by precise rules. *Ford* v. *H. W. Dubiske & Co.*, 105 Conn. 572, 578; *Knight* v. *Continental Automobile Mfg. Co.*, 82 Conn. 291, 293. We cannot say that the damages awarded in this case require interference by this court.

The court, finally, concluded that the evidence adduced with respect to the defendant's counterclaim did not satisfy the burden imposed on the defendant. There was evidence which, if the court believed it, showed that in the winter of 1964, after the defendant found that melted snow leaked through the roof onto its new-car display, and at its request, the plaintiff provided some repairs to the roof; when the repairs made by the plaintiff did not eliminate the leaks, the defendant bought material and used its own labor to make further repairs. There was also evidence, if the court believed it, that the defendant expended certain sums for a fuel tank and for plumbing and electrical repairs. In all of these respects the court found that the defendant never billed the plaintiff for the fuel tank or the repairs,

or for reimbursement thereof, and did not attempt to set off the bills which it incurred against the monthly rental payments. A written lease was prepared in advance of August 1, 1963, but was never executed. The court concluded that the plaintiff had never promised to make the particular repairs or instal the fuel tank and that there was no other direct obligation on the part of the plaintiff in connection therewith under the circumstances. We cannot interfere with this conclusion. The burden was on the defendant to show by a fair preponderance of the evidence that the amounts claimed in its counterclaim were owed by the plaintiff. If the evidence was in equipoise, or evenly balanced, the defendant could not prevail. *Vanderkruik* v. *Mitchell,* 118 Conn. 625, 628; Holden & Daly, Conn. Evidence § 61 (c), pp. 152, 153. Here again, there was conflicting evidence, and as we have said, the question of credibility of the witnesses is for the trier. *Romaniello* v. *Dyna Distributors, Inc.,* 154 Conn. 605, 606. There was ample evidence on which the court based its finding. Its conclusions were logical and reasonable and cannot be disturbed. *Taylor* v. *Taylor,* 154 Conn. 340, 343.

There is no error.

In this opinion DEARINGTON and KOSICKI, Js., concurred.