[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 430-G
The plaintiff and his son are engaged in the excavating business. The defendants, husband and wife, own a home in Fairfield. In the early 1980's the plaintiff had performed excavation work for the defendants in connection with the construction of their present home. In early 1990, the defendant James M. Gallagher (defendant) telephoned the plaintiff and invited him over to their home for a Sunday morning breakfast to discuss doing excavation work for a proposed in-law house on the defendants' parcel, near their home. The plaintiff accepted the invitation.
At the meeting the defendant explained the scope of the work he wanted performed. The plaintiff stated that the cost of such an excavation project would be at least $25,000. The defendant explained that he was unwilling to pay that much and that he would seek bids elsewhere. Ultimately, the parties agreed that the plaintiff would perform the excavation and certain related work for $19,000. This contract price included both the cost of labor CT Page 430-H and materials.
It subsequently developed that the defendant and his mother-in-law paid for the many of the materials. The cost of these materials totalled $4,756.60. The plaintiff did some extra work that was not within the ambit of the agreement such as the removal of trees because he wanted to be "neighborly".
When the plaintiff had performed about half of the work required by the contract he presented the defendant with a bill in the amount of $9,947.76. The defendant was surprised by the presentation of the bill because the parties had not discussed the plaintiff's being paid on an interim basis. The plaintiff explained that he had expenses to pay, and the defendant paid the bill. On March 16, 1990, when the plaintiff had performed about eighty-five percent of the work, he presented the defendant with a second bill in the amount of $13,744.96. The defendant was shocked by this bill, telephoned the plaintiff, and told him he was not going to pay it. The plaintiff offered to finish the job if the defendant paid the second bill, The defendant refused. The following day the plaintiff removed his equipment from the CT Page 430-I defendants' property and ceased performance. It cost the defendants $2,800 to complete the work.
 I
The plaintiff's second revised complaint is in two counts. The first count alleges that the parties had an express contract for the plaintiff to perform the work for $25,000. Not even the plaintiff testified that this was the contract price. The plaintiff claimed that he had agreed to do the work on a "time and materials" basis, that he would try to keep the cost under $20,000, but that this would be difficult. The only other witness called during the presentation of the plaintiff's case-in-chief was the plaintiff's son who worked on the job but testified that he had no knowledge as to the terms of the contract.
After the plaintiff rested at the conclusion of his case, the defendant moved to dismiss the first count of the second revised complaint for failure of the plaintiff to make out a prima facie case. See Practice Book § 302.[1] "Whether the [plaintiff] made out a prima facie case, [presents] a question of law for the court. CT Page 430-JFalker v. Samperi, 190 Conn. 412, 419, 461 A.2d 681 (1983). The test is whether plaintiff's evidence is sufficient, in point of law, to make out a prima facie case in his favor. Ace-HighDresses, Inc. v. J.C. Trucking Co., 122 Conn. 578, 580, 191 A. 536
(1937). In re Juvenile Appeal (85-1), 3 Conn. App. 158, 160,485 A.2d 1355 (1985). In deciding this question of law, it is the duty of the trial court to take as true the evidence offered by the plaintiff and to interpret it in the light most favorable to [him], with every reasonable inference being drawn in [his] favor.Berchtold v. Maggi, 191 Conn. 266, 271, 464 A.2d 1 (1983). If, after viewing the evidence in a light most favorable to the plaintiffs, the court could not reasonably find the essential issues on the complaint in their favor, a judgment of dismissal is appropriate. Hinchliffe v. American Motors Corporation, 184 Conn. 607,609, 440 A.2d 810 (1981)." (Internal quotation marks omitted.) Pagni v. Corneal, 13 Conn. App. 468, 470, 537 A.2d 520, cert. denied, 207 Conn. 810, 541 A.2d 1239 (1988).
In their pleadings, the defendants admit that there was an express contract. This court may take judicial notice of the operative pleadings "forming a part of the file of the case and CT Page 430-K use them for any proper purpose . . . ." Nichols v. Nichols,126 Conn. 614, 620, 13 A.2d 591 (1940). The admissions and allegations in the defendants' operative pleadings are judicial admissions conclusive on the defendants. Jones Destruction, Inc. v. Upjohn,161 Conn. 191, 199, 286 A.2d 308 (1971); DelVecchio v. DelVecchio,146 Conn. 188, 191, 148 A.2d 554 (1959). However, in their pleadings the defendants deny that the contract price was $25,000. Their claim is that the contract price was $19,000. There are, therefore, three possible express contracts alleged or claimed in testimony: one for $25,000, another for $19,000, and still another in which the plaintiff would be paid for "time and materials". Before the plaintiff rested his case, however, there was evidence only as to the last, a "time and materials" contract. The defendants' allegation in their counterclaim that there was an express contract for $19,000 cannot be distorted into an admission that there was an express contract for $25,000.
Even were the court to find that the variance between the claim in the revised complaint of an agreement at a contract price of $25,000 and the evidence of an agreement on a "time and materials" basis to be an immaterial variance; Practice Book § 193[2]; Lavitt v. Aberle, 144 Conn. 723, 724, 138 A.2d 318 (1957); CT Page 430-L notwithstanding the plaintiff's failure to ever move to amend his complaint to conform to his proof at trial[3], the plaintiff still may not recover on the first count. "In order to form a binding and enforceable contract, there must exist an offer and an acceptance based on a mutual understanding by the parties. Cavallov. Lewis, 1 Conn. App. 519, 520, 473 A.2d 338 (1984). The mutual understanding must manifest itself by a mutual assent between the parties. Ubysz v. DiPietro, 185 Conn. 47, 51, 440 A.2d 830 (1981). Further, the contract must be definite and certain as to its terms and requirements. Augeri v. C. F. Wooding Co., 173 Conn. 426,429-30, 378 A.2d 538 (1977)." Steinberg v. Reding, 24 Conn. App. 212,214, 587 A.2d 180 (1991). "In contract actions, the price must be capable of being ascertained from the contract. `By this is not meant that the exact amount in figures must be stated in the agreement; however, where that is not the case, the price must, by the terms of the agreement, be capable of being definitely ascertained.' 17 Am.Jur.2d, Contracts 82." HousingAuthority v. Melvin, 12 Conn. App. 711, 715, 533 A.2d 1231 (1987), cert. denied, 207 Conn. 804, 540 A.2d 74 (1988). Here, it is impossible to definitely ascertain the how much the defendants were to pay for labor, much less what the contract price was, from CT Page 430-M the terms of the agreement. Viewing the evidence presented during the plaintiff's case-in-chief in a light most favorable to him, the court cannot reasonably find the issues in favor of the plaintiff. Therefore, the defendant's motion to dismiss for failure of the plaintiff to make out a prima facie case is granted as to the first count.
Moreover, having considered all of the evidence, the court does not credit the plaintiff's testimony with respect to the terms of the agreement. The court finds that there was an express contract, that the contract price was $19,000 and that it was the plaintiff who breached the contract.
 II
The second count of the plaintiff's second revised complaint seeks recovery for the excavation work performed by the plaintiff based on the doctrine of unjust enrichment.[4] The plaintiff alleges that since the defendants paid him only $9,947.96 of the contract price for the work he did, they have been benefitted [benefited] and unjustly enriched in the amount of the balance of the contract price. The CT Page 430-N retention of that benefit, claims the plaintiff, is wrongful "and constitutes bad faith for the purpose of avoiding payment of the Plaintiff's just debt."
The general oft-recited rule is that "[a]n `implied contract can only exist where there is no express one.' Collins v. Lewis,111 Conn. 299, 304, 149 A. 668 (1930). `[Q]uantum meruit [is a form] of the equitable remedy of restitution by which a plaintiff may recover the benefit conferred on a defendant in situations where no express contract has been entered into by the parties.'Burns v. Koellmer, 11 Conn. App. 375, 385, 527 A.2d 1210 (1987). `[P]arties who have entered into controlling express contracts are bound by such contracts to the exclusion of inconsistent implied contract obligations.' H. B. Toms Tree Surgery, Inc. v. Brant,187 Conn. 343, 347, 446 A.2d 1 (1982); Polverari v. Peatt,29 Conn. App. 191, 199, 614 A.2d 484, cert. denied, 224 Conn. 913,617 A.2d 166 (1992)." Rosick v. Equipment Maintenance Service, Inc.,33 Conn. App. 25, 37, 632 A.2d 1134 (1993). In general, a party to an express contract cannot assert a claim for quantum meruit or unjust enrichment for work covered by the contract. Id., 37-38, and cases cited therein; see also Polverari v. Peatt, 29 Conn. App. 191, CT Page 430-O 199, 614 A.2d 484, cert. denied, 224 Conn. 913, 617 A.2d 166
(1992); Feng v. Dart Hill Realty, Inc., 26 Conn. App. 380, 383,601 A.2d 547, cert. denied, 223 Conn. 912, 612 A.2d 59 (1992).
Our law has long recognized that an exception to this rule is that a plaintiff who has substantially performed her contract, and who is not in wilful default of her agreement, has "`a cause of action for the reasonable value of the work and materials so furnished, estimated with reference to the contract price, and to the resulting benefit to the defendant, provided she appropriated that benefit under circumstances sufficient to raise an implied promise to pay for it.'" Kearns v. Andree, 107 Conn. 181, 186,139 A. 695 (1928), quoting Jones Hotchkiss Co. v. Davenport,74 Conn. 418, 420, 50 A. 1028 (1898).
More recently, our Supreme Court has abandoned the requirement that the performance by the breaching party be substantial; Vines v. Orchard Hills, Inc., 181 Conn. 501, 505-508,435 A.2d 1022 (1980); Aetna Casualty Surety Co., 206 Conn. 409,414-415, 538 A.2d 219 (1988); and has relaxed the requirement that his breach not be "wilful" in order for him to seek restitution CT Page 430-P for benefits he has conferred. Vincenzi v. Cerro, 186 Conn. 612,615-616, 442 A.2d 1352 (1982).
"The right of a contracting party, despite his default, to seek restitution for benefits conferred and allegedly unjustly retained has been much disputed in the legal literature and in the case law . . . . Although earlier cases often refused to permit a party to bring an action that could be said to be based on his own breach . . . many of the more recent cases support restitution in order to prevent unjust enrichment and to avoid forfeiture . . . ."Vines v. Orchard Hills, Inc., supra. 505-506.
"A variety of considerations, some practical and some theoretical, underlie this shift in attitude toward the plaintiff in breach. As Professor Corbin pointed out in his seminal article, `The Right of a Defaulting Vendee to the Restitution of Installments Paid,' 40 Yale L.J. 1013 (1931), the anomalous resultof denying any remedy to the plaintiff in breach is to punish moreseverely the person who has partially performed, often in good faith, than the person who has entirely disregarded hiscontractual obligations from the outset. Only partial performance CT Page 430-Q triggers a claim for restitution, and partial performance will not, in the ordinary course of events, have been more injurious to the innocent party than total nonperformance. Recognition of a claim in restitution is, furthermore, consistent with the economic functions that the law of contracts is designed to serve. See Kessler Gilmore, Contracts, pp. 4-6 (1970). The principal purpose of remedies for the breach of contract is to provide compensation for loss; see Restatement (Second), Contracts, c. 16, Introductory Note (Tent. Draft No. 14, 1979); Farnsworth, "Legal Remedies for Breach of Contract," 70 Colum. L. Rev. 1145 (1970); and therefore a party injured by breach of contract is entitled to retain nothing in excess of that sum which compensates him for the loss of his bargain . . . . A claim in restitution, although legalin form, is equitable in nature, and permits a trial court tobalance the equities, to take into account a variety of competingprinciples to determine whether the defendant has been unjustlyenriched. `Even though we adhere to the rule that only compensatory damages are to be awarded, there are other important questions of policy to be considered. One is whether aid is to be given to one who breaches his contract, particularly when the breach is deliberate and without moral justification. Another is whether restitution can be administered without leaving the CT Page 430-R innocent party with uncompensated damages.' 1 Palmer, Restitution 5.1, p. 574 (1978)." (Emphasis added.) Vines v. Orchard Hills,Inc., supra, 506-507; see id., 507-508.
In Argentinis v. Gould, 219 Conn. 151, 592 A.2d 378 (1991), the supreme court, overruling Edens v. Kole Construction Co.,188 Conn. 489, 450 A.2d 1161 (1991), held that in an action against a builder for failure to substantially perform a construction contract it was error to permit the non-breaching owner to collect damages unreduced by the outstanding balance of the contract price that the owner avoids paying by virtue of the breach. The reasoning in Argentinis is applicable to a contractor's action in quantum meruit. "Otherwise, the owner would be placed in a better position than full performance would have put him . . . ." Id., 158.
Finally, in Vicenzi v. Cerro, supra, 186 Conn. 615-616, the supreme court acknowledged that it had "in several cases approved the common statement that a contractor who is guilty of a `wilful' breach cannot maintain an action upon the contract. Morici v.Jarvie, 137 Conn. 97, 100, 75 A.2d 47 (1950); Kelley v. Hance,
CT Page 430-S108 Conn. 186, 189, 142 A. 683 (1928); Tice v. Moore, 82 Conn. 244,249, 73 A. 133 (1909); see 3A Corbin, Contracts § 707. The contemporary view, however, is that even a conscious and intentional departure from the contract specifications will not necessarily defeat recovery, but may be considered as one of the several factors involved in deciding whether there has been full performance. 3A Corbin, Contracts § 707; 2 Restatement (Second), Contracts § 237, comment d. The pertinent inquiry is not simply whether the breach was `wilful' but whether the behavior of the party in default `comports with standards of good faith and fair dealing.' 2 Restatement (Second), Contracts § 241(e), and see comment f. Even an adverse conclusion on this point is not decisive but is to be weighed with other factors, such as the extent to which the owner will be deprived of a reasonably expected benefit and the extent to which the builder may suffer forfeiture, in deciding whether there has been substantial performance. Id., and see § 237, comment d."[5]
The court finds that the plaintiff's breach was wilful and that his behavior did not "`comport with standards of good faith and fair dealing.'" Vinvenzi v. Cerro, supra, 186 Conn. 616, CT Page 430-T quoting Restatement (Second) Contracts § 241(e). The plaintiff had a contract to perform at a contract price of $19,000, to which he had been negotiated down. He attempted to exact greater consideration from the defendant and, when he was unsuccessful in doing so, he left this job to work on another. These facts do not necessarily preclude the plaintiff from receiving restitution. However, considering the totality of the relevant circumstances, balancing the equities, and "tak[ing] into account a variety of competing principles to determine whether the defendant has been unjustly enriched"; Vines v. Orchard Hills, Inc., supra,181 Conn. 507; the court concludes that restitution here would be inappropriate. The contract price, out of which the plaintiff was to pay for materials, was $19,000. Out of this the defendant or his mother-in-law paid for the materials, which cost $4,756. The plaintiff was paid $9,947.76 as an interim payment. The cost to complete the work after the plaintiff abandoned the job was $2,800. The balance left from the contract price after deducting these sums is approximately $1,496. Given the modesty of this sum, the nature of the plaintiff's conduct, and that it is the plaintiff who has hailed the defendants into court visiting upon them expense, annoyance and inconvenience, the plaintiff CT Page 430-U should not be awarded restitution of $1,496.[6]
 III
The defendants have filed a seven count counterclaim. In the first count of the counterclaim the defendants allege that the plaintiff breached his contract with them. As discussed supra, the court finds that the plaintiff did breach his contract with the defendants. However, the defendants paid the plaintiff only $9,947.76 toward the contract price of $19,000. The defendant's mother-in-law also spent $4,756 for materials which the plaintiff had contracted to pay for. The defendants expended another $2,800 to complete the job after the plaintiff had abandoned it when it was 85 percent completed. The plaintiff would have been entitled to another $4,296.24 had he completed the work. This must be set off against the $2,800 which it cost the defendants to complete the work. Argentinis v. Gould, supra, 219 Conn. 157-159.
"It is axiomatic that the sum of damages awarded as compensation in a breach of contract action `should place the injured party in the same position as he would have been in had CT Page 430-V the contract been performed.' Rametta v. Stella, 214 Conn. 484,492, 572 A.2d 978 (1990). The injured party, however, `is entitled to retain nothing in excess of that sum which compensates him for the loss of his bargain.' Vines v. Orchard Hills, Inc., 181 Conn. 501,507, 435 A.2d 1022 (1980). Guarding against excessive compensation, the law of contract damages limits the injured party `to damages based on his actual loss caused by the breach.' 3 Restatement (Second), supra, § 347, comment (e). The concept of `actual loss accounts for the possibility that the `breach itself' may result in `a saving of some cost that the injured party would have incurred if he had had to perform.' Id., comment (d). In such circumstances, the amount of the cost saved `will be credited in favor of the wrongdoer'; 5A Corbin, supra, § 1038; that is, `subtracted from the loss . . . caused by the breach in calculating [the injured party's] damages.' 3 Restatement (Second), supra; see 11 S. Williston Contracts (3d Ed. Jaeger) §§ 1338, 1339. `It is on this ground that . . . when an owner receives a defective or incomplete building, any part of the price that is as yet unpaid is deducted from the cost of completion that is awarded to him . . . .' 5A Corbin, supra; see Sabo v. Strolis,148 Conn. 504, 506, 172 A.2d 609 (1961) (limiting owner's damages CT Page 430-W for builder's breach by default in performance to cost of completion less outstanding balance of contract price). Otherwise, the owner would be placed in a better position than full performance would have put him, thereby doubly compensating him for the injury occasioned by the breach. See generally 5 A. Corbin, supra, § 1036; see also Sabo v. Strolis, supra." (Footnotes omitted.) Argentinis v. Gould, supra, 219 Conn. 157-158. "The drafters of the Restatement (Second) of Contracts aptly illustrate the operation of the `actual loss' concept in the context of construction contracts as follows: `A contracts to build a house for B for $100,000, but repudiates the contract after doing part of the work and having been paid $40,000. Other builders will charge B $80,000 to finish the house. B's damages include the $80,000 cost to complete the work less the $60,000 cost avoided or $20,000, together with damages for any loss caused by the delay . . . ." 3 Restatement (Second), Contracts § 348, comment (c), illustration 2; see id., § 347, comment (e), illustration 12." Id., 158n. 5.
A job for which the defendants had agreed to pay $19,000 cost them only $17,503.76. The defendants did not sustain actual CT Page 430-X damages as a result of the plaintiff's breach. They are entitled only to nominal damages for the plaintiff's breach of contractExcelsior Needle Co. v. Smith, 61 Conn. 56, 65, 23 A. 693 (1891).
 IV
In the second count of their counterclaim the defendants allege, inter alia: "During the course of the plaintiff's work, he dug below certain elevation marks causing the area to flood. As a result of the plaintiff's unskillful and unworkmanlike conduct, the defendants incurred expenses for the removal of water and for material and labor to correct plaintiff's actions."
"Under our rules of practice, a counterclaim, if proper, is an independent action." Home Oil Co. v. Todd, 195 Conn. 333, 341,487 A.2d 1095 (1985). "The general rule is that the burden of proving a . . . counterclaim is on the defendant[s]." Ruscito v.F-Dyne Electronics Co., 177 Conn. 149, 166, 411 A.2d 1371 (1979). The defendants had the burden of proving their counterclaim by a fair preponderance of the evidence. Sisisky v. Enfield Chrysler-Plymouth,Inc., 5 Conn. Cir. 427, 436, 256 A.2d 260 (App.Div. CT Page 430-Y 1968). While it is a close question, the court finds that the defendants have sustained this burden.
The defendants expended $929.34 to correct the negligent work performed by the plaintiff. Even if this amount is factored into the costs which the defendants incurred after the plaintiff abandoned the job, it still would not equal the balance which would have been owing the plaintiff under the contract had he completed the project. Accordingly, the defendants may not recover other than nominal damages on this count of their counterclaim.Argentinis v. Gould, supra, 219 Conn. 157-159.[7]
 V
In the third count of their counterclaim the defendants allege that "[b]y removing his equipment and refusing to complete the excavation and related work, the plaintiff violated the Unfair Trade Practices Act, Connecticut General statutes § 42-110a" et seq. commonly referred to as CUTPA.
General statutes § 42-110b(a) provides in relevant part: "No CT Page 430-Z person shall engage in . . . unfair or deceptive acts or practices in the conduct of any trade or commerce." "It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the `cigarette rule' by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial in jury to consumers [(competitors or other businessmen)]. Conaway v. Prestia, [191 Conn. 484, 492-93,464 A.2d 847 (1983)], quoting FTC v. Sperry Hutchinson Co.,405 U.S. 233, 244-45 n. 5, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972) . . . .McLaughlin Ford, Inc. v. Ford Motor Co., 192 Conn. 558, 567-68,473 A.2d 1185 (1984)." (Internal quotation marks omitted.)Cheshire Mortgage Service, Inc. v. Montes, 223 Conn. 80, 105-106,612 A.2d 1130 (1992).
While the third criteria is the most important; A-G Foods,Inc. v. Pepperidge Farms, Inc., 216 Conn. 200, 215-216, 579 A.2d CT Page 430-AA 69 (1990); "[a]ll three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three . . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice; see, e.g., Sprayfoam, Inc. v. Durant's Rental Centers,Inc., 39 Conn. Sup. 78, 468 A.2d 951 (1983); or a practice amounting to a violation of public policy. See, e.g., Sportsmen'sBoating Corporation v. Hensley, [192 Conn. 747, 474 A.2d 780
(1984)]. Web Press Services Corporation v. New London Motors,Inc., 203 Conn. 342, 355, 525 A.2d 57 (1987). Furthermore, a party need not prove an intent to deceive to prevail under CUTPA. See id., 363 (knowledge of falsity, either constructive or actual, need not be proven to establish CUTPA violation)." (Internal quotation marks and footnote omitted.) Cheshire Mortgage Service,Inc. v. Montes, supra, 223 Conn. 106.
Applying these criteria to the facts found supra, the court concludes that the plaintiff committed a CUTPA violation. SeeBridgeport Restoration Co. v. A. Petrucci Construction Co.,211 Conn. 230, 557 A.2d 1263 (1989); Web Press Service Corporation v.CT Page 430-BBNew London Motors, Inc., supra, 203 Conn. 342; Lester v. ResortCamplands International, Inc., 27 Conn. App. 59, 72, 605 A.2d 550
(1992). Since "a party need not prove an intent to deceive to prevail under CUTPA"; Cheshire Mortgage Service, Inc. v. Montes,
supra, 223 Conn. 106; it is not dispositive nor inconsistent that the court also finds that the sixty-three year old plaintiff, at the time of his breach, may not have believed that he had a contract to perform at a firm contract price of $19,000.[8]
General Statutes § 42-110g(a) provides: "Any person who suffers any ascertainable loss of money or property, real orpersonal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages. Proof of public interest or public injury shall not be required in any action brought under this section. The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper." (Emphasis added.)
"Under CUTPA, `[t]he ascertainable loss requirement is a CT Page 430-CC threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief.' (Footnote omitted.) Hinchliffe v. American Motors Corporation,184 Conn. 607, 615, 440 A.2d 810 (1981)." Conaway v. Prestia,191 Conn. 484, 494, 464 A.2d 847 (1983). Although the contours of this requirement are as yet not well defined in Connecticut jurisprudence, ascertainable loss is not equivalent to actual damages. Hinchliffe v. American Motors Corporation, supra,184 Conn. 615. In Hinchliffe, the court stated: "To satisfy the `ascertainable loss' requirement, a plaintiff need prove only that he has purchased an item partially as a result of an unfair or deceptive practice or act and that the item is different from that for which he bargained." Id., 614-615; see Conaway v. Prestia,
supra, 191 Conn. 494-495. Here, the defendants contracted for one thing, paid money, albeit not the entire contract price, and as the result of the plaintiff's unfair practice, were left with something other than that for which they had contracted. UnderHinchliffe and Conaway the defendants have satisfied the ascertainable loss requirement. However, as discussed supra, the defendants did not prove that they sustained actual damages. "The burden of proving actual damages is on the party claiming them." CT Page 430-DDPrishwalko v. Bob Thomas Ford, Inc., 33 Conn. App. 575, 586,636 A.2d 1383 (1994).
The defendants also seek punitive damages and attorneys fees. "Awarding punitive damages and attorney's fees under CUTPA is discretionary; General Statutes 42-110g(a) and (d)[9]; see BaileyEmployment System, Inc. v. Hahn, 545 F. Sup. 62, 73 (D.Conn. 1982), aff'd, 723 F.2d 895 (2d cir. 1983) . . . . `In order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights. Collens v. New Canaan Water Co.,155 Conn. 477, 489, 234 A.2d 825 (1967). In fact, the flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence. Triangle Sheet Metal Works, Inc. v. Silver, 154 Conn. 116,128, 222 A.2d 220 (1966).' Venturi v. Savitt, Inc., 191 Conn. 588,592, 468 A.2d 933 (1983)." Gargano v. Heyman, 203 Conn. 616,622, 525 A.2d 1353 (1987). "The legislature departed from the narrow scope of common law punitive damages, however, when it adopted 42-110g(a) of CUTPA, which provides that the `court may, in its discretion, award punitive damages . . . as it deems CT Page 430-EE necessary or proper.' See Bailey Employment System, Inc. v. Hahn,545 F. Sup. 62, 72 (D.Conn. 1982). This statutory provision allows for punitive damages based on a theory of deterrence, whereas the common law premise of such an award is compensation." Lenz v. CNAAssurance Co., 42 Conn. Sup. 514, 515, 630 A.2d 1082 (1994). Applying these criteria to the court's earlier findings, this court concludes that the imposition of punitive damages in this case would not serve a proper purpose. "CUTPA creates an essentially equitable cause of action . . . ." AssociatedInvestment Co. Ltd. Partnership v. Williams Associates IV,230 Conn. 148, 155, 645 A.2d 505 (1994). In addition, there is no basis for determining a proper amount of punitive damages in this case. See, e.g., Staehle v. Michael's Garage, Inc., 35 Conn. App. 455,463, 646 A.2d 888 (1994); Lenz v. CNA Assurance Co., supra, 42 Conn. Sup. 515.
Finally, the defendants seek attorneys fees under CUTPA. General Statutes § 42-110g(d). "The public policy underlying CUTPA is to encourage litigants to act as private attorneys general and to engage in bringing actions that have as their basis unfair or deceptive trade practices. Hernandez v. Monterey VillageCT Page 430-FFAssociates Limited Partnership, 17 Conn. App. 421, 425,553 A.2d 617 (1989). In order to encourage attorneys to accept and litigate CUTPA cases, the legislature has provided for the award of attorney's fees and costs. Gill v. Petrazzuoli Bros. Inc.,10 Conn. App. 22, 33, 521 A.2d 21 (1987); see also ChryslerCorporation v. Maiocco, 209 Conn. 579, 593, 552 A.2d 1207 (1989). Once liability has been established under CUTPA, attorney's fees and costs may be awarded at the discretion of the court. VenNguyen v. DaSilva, 10 Conn. App. 527, 530, 523 A.2d 1369 (1987)."Freeman v. Alamo Management Co., 24 Conn. App. 124, 133,586 A.2d 619 (1991), reversed on other grounds, 221 Conn. 674, 607 A.2d 370
(1992). The court declines to award attorneys fees for several reasons. First, the defendants' CUTPA claim was asserted by way of a counterclaim in which they established no actual damages. The incentive of statutory attorneys fees was not necessary in order to encourage the defendants to assert what the court finds to be a defensive counterclaim. Secondly, the defendants adduced no evidence of attorneys fees. Cf.Barco Auto Leasing Corporation v.House, 202 Conn. 106, 120-121, 520 A.2d 162 (1987).[10] Thirdly, the court's disposition of the plaintiff's claim for unjust enrichment already has left the defendants' modestly compensated, albeit not CT Page 430-GG unjustly so, for their attorneys fees.
 VI
In the fourth count, the defendants allege that in breaching his contract, "[t]he actions of the plaintiff were recklessly indifferent to the rights of the defendants or were intentional or wanton violation of those rights." Since the defendants have not adduced evidence of either compensatory damages or attorneys fees, as discussed supra, it would serve no useful purpose to review this claim. Moreover, the defendants have not adequately briefed this claim as they were required to do; Practice Book § 285A[11]; and, accordingly, they have abandoned it. Grace Community Churchv. Planning Zoning Commission, 42 Conn. Sup. 256, 259,615 A.2d 1092 (1992); see Emlee Equipment Leasing Corporation v. WaterburyTransmission, Inc., 31 Conn. App. 455, 475, 626 A.2d 307 (1993).
 VII
In the fifth count of their counterclaim, the defendants allege that the plaintiff violated CUTPA; General Statutes § CT Page 430-HH42-110a et seq.; by failing to comply with Connecticut's Home Improvement Act, General Statutes § 20-418 et seq. The Home Improvement Act provides that a home improvement contract entered into by a contractor shall not be valid unless that contract complies with certain statutory requirements. See General Statutes § 20-429.[12] The failure of a contractor to comply with General Statutes § 20-429 has been held to be a per se violation of CUTPA.A. Secondino and Son, Inc. v. LoRicco, 215 Conn. 336, 342,576 A.2d 464 (1990); see Woronecki v. Trappe, 228 Conn. 574, 579,637 A.2d 783 (1994). However, the Home Improvement Act, not surprisingly, applies only to a "home improvement". This term is defined in the Act. General Statutes § 20-419(4).[13] When legislation contains a specific definition, the courts are bound to accept that definition. International Business Machines Corp.v. Brown, 167 Conn. 123, 134, 355 A.2d 236 (1974). General Statutes § 20-429(4) expressly provides that a "`[h]ome improvement' does not include . . . [t]he construction of a new home . . . ." Whether a building is a "new home" is a question of fact. Fox v. Zoning Board of Appeals, 146 Conn. 70, 75,147 A.2d 472 (1958). The court finds that the structure for which the plaintiff was engaged to do excavation was intended to be and in design is a "new home". Accordingly, there is no violation of the CT Page 430-II Home Improvement Act and no violation of CUTPA.
 VIII
In the sixth count of their counterclaim, the defendants allege that because the agreement with the plaintiff was a Home Improvement Contract it also was, by statutory fiat; General Statutes § 20-429(e); a home solicitation sale. As such, claim the defendants, it was required to comply with the requirements of the Home Solicitation Sales Act. The defendants allege that the agreement did not comply with the requirements of that legislation. The court's holding that the agreement between the parties was not a "home improvement contract" is dispositive of this claim.
The defendants' claims in the seventh count appear to be duplicative of claims in prior counts alleging violations of CUTPA and of the Home Improvement Act. For the reasons discussed supra, and because the claims in the seventh count are not adequately briefed, they need not be separately addressed.
Judgment may enter dismissing the first count of the CT Page 430-JJ complaint for failure to establish a prima facie case.
Judgment may enter for the defendants on the second count of the complaint.
Judgment may enter for the defendants on the first, second and third counts of their counterclaim for $1.00.
Judgment may enter for the plaintiff on the fourth, fifth, sixth and seventh counts of the counterclaim.
BY THE COURT
Levin, J.